UNITED STATES DISTRICT COURT

EASTER DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NATALIE KONRICK | * | Civil Action No.: 14-524 |
|    Plaintiff | * | |
|        vs. | * | Section: |
| | * | |
| EXXON MOBIL CORPORATION, | * | Judge: |
| and CHALMETTE REFINING, LLC | * | |
|    Defendant | * | Magistrate: |

*****************************************************************************

### Complaint

The Complainant, NATALIE KONRICK, through undersigned counsel, files this Complaint alleging personal injury and also wrongful death of her unborn daughter as follows:

### Parties

1.

A.   *The Complainant is*   **Natalie Konrick**, a person of legal age of majority domiciled in Hancock County, Mississippi.

B.   The following parties are made **defendants** in *solido*:

  i. **Exxon Mobil Corporation** ("Exxon"), incorporated in New Jersey with its principal place of business in Texas, and whose agent for service of process is Corporation Service Co., 320 Somerulos St., Baton Rouge, LA 70802.

  ii. **Chalmette Refining, L.L.C.** a Delaware company with its principal place of business in Chalmette, LA, and whose agent for service of process is Corporation Service Co., 320 Somerulos St., Baton Rouge, LA 70802.

**Jurisdiction and Venue**

2.

This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among all the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3.

This Court has personal jurisdiction over the defendant who were doing business in the Eastern District at the time of the injury.

4.

The Defendants are incorporated under the laws of New Jersey and Delaware with their principal places of business in Texas and Louisiana.

5.

Complainant, Natalie Konrick, is domiciled in Mississippi.

6.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because the Defendant is doing business in this District and because the events giving rise to the plaintiffs' causes of actions arose in this District.

**Background**

7.

Natalie Konrick was employed as a security guard for U.S. Security Associates during between January 2013 until April 5, 2013.

8.

While employed by U.S. Security Associates, Natalie Konrick was assigned to work as a security Guard at the Exxon Chalmette Refinery. Ms. Konrick worked at the dock area checking IDs, badges, and bags of crew members entering the facility between January 2013 and April 5,

2013.  As result of her work locations, she was exposed to benzene from the loading and unloading of ships and barges on a daily basis.  During her work at Exxon's docks she smelled strong fumes on a daily basis.

9.

Chalmette Refinery, LLC (hereinafter CRLLC) is the owner of the refinery located at 500 W. St. Bernard Highway, Chalmette, LA where Natalie Konrick was a security guard.  This facility is operated by Exxon Mobil Corporation.

10.

During her time at Exxon Chalmette refinery, Natalie Konrick did not receive any training concerning benzene or $H_2S$.  Ms. Konrick was never by the Defendants that she was exposed to benzene and $H_2S$.  She was not informed that that exposure to benzene and $H_2S$ could cause direct injury to her, or that they could cause injury to her fetus.

11.

Ms. Konrick and her fetus received daily exposures to benzene and $H_2S$ from January 2103 to April 13 as a result of her work at the Chalmette Refinery.  Additionally, at the beginning of April Exxon experienced a leak which released elevated amounts of benzene and $H_2S$.  Natalie Konrick was 27 weeks pregnant at the time of the leak which occurred on April 3, 2013. From April 3, 2013 to April 5, 2013 Natalie Konrick and her unborn daughter were injured by toxic exposure to unsafe levels benzene and hydrogen sulfide ($H_2S$) while she was on duty as a security guard at the Exxon Chalmette Refinery.

12.

On April 3, 2013, Exxon experienced a leak in a discharge pipe from the Flare #1 knockout drum near Tank 5502.

13.

Exxon's initial notification submitted to the Louisiana Department of Environmental Quality (LDEQ) reported that water containing sulfur and hydrocarbon compounds leaked from the pipe and had released potentially reportable quantity exceedances of approximately 100 pounds of $H_2S$ (Hydrogen sulfide) and 10 pounds of benzene.

14.

Exxon later revised its estimates of the release to 4.23 pounds hydrogen sulfide, and 0.21 pounds of benzene.

15.

Air Monitoring near the site of the leak revealed concentrations of benzene as high as 14.20 ppm. This measurement substantially exceeds the U.S. Occupational Safety and Health Administration (hereinafter "OSHA") established Permissible Exposure Limit for benzene of 1 ppm 8 hour TWA, and maximum of 5 ppm benzene in a 15 minute.

16.

Additionally, as a result of the leak on April 3, 2013, air monitoring for $H_2S$ near the leak found $H_2S$ concentrations up to 184.9 ppm. This quantity exceeds the current OSHA peak exposure limit for $H_2S$ which is a 20 ppm ceiling concentration.

17.

Air monitoring on the next day, April 4, 2013 for Flare #1 Pipeline leak also reported benzene and $H_2S$ concentrations exceeding the OSHA Permissible Exposure Limits (PEL).

18.

Natalie Konrick and her unborn daughter suffered exposure to benzene and $H_2S$ during Natalie's two 12 hours shifts on April 3rd and 4th while working at the nearby dock. The dock

where Ms. Konrick worked was located approximately 300 yards away from the site of the leak.

19.

The security guard working the shift prior to Natalie's on April 3, 2013 went home early because she was suffering from nausea and lightheadedness. Yet, no warning of the release of benzene and hydrogen sulfide was provided to the security guards.

20.

As Natalie's shift progressed on April 3, 2013 she began to feel weakness, dizziness, nausea, and fatigue, these symptoms progressed throughout her shift. Her symptoms improved after she left work for the day.

21.

Upon returning to work the next day, she again began to experience symptoms of nausea and fatigue, symptoms which once again were relieved after she left work at the end of her shift.

22.

A few Days later, on April 9, 2013, Ms. Konrick rushed to the hospital after experiencing pelvic pressure, decreased fetal movement, and vaginal leakage. Examination revealed that Ms. Konrick's unborn daughter was dead. Natalie delivered her stillborn daughter of 27 weeks gestation the next day, after labor was induced.

23.

The autopsy of Ms. Konrick's stillborn daughter revealed symptoms consistent with fetal benzene exposure including: necrotizing choramnionitis of fetal membrane, obliterated placental vascular lumina, necrotic endothelium of umbilical cord, and increased fetal nucleated red blood cells in umbilical cord, and cleft palate.

24.

Exxon and CRLLC, as petrochemical refiners and chemical manufacturers knew the dangers and health risk associated with exposures to benzene and hydrogen sulfide. Through industry publications, government publications, medical and epidemiological studies, Exxon and CRLLC either knew of should have known the hazards associated with exposure to benzene and $H_2S$, including the following:

(a)  Scientific studies have shown an elevated risk of spontaneous abortion in women exposed to benzene during pregnancy, as well as an increased risk of birth defects, including oral cleft defects.

(b)  Hydrogen sulfide acts on the body by interfering with or blocking cellular respiration, which resulting in cellular anoxia (cells do not receive oxygen and die.) Studies have found that subtle impairments of brain function were documented from exposures to concentrations of less than 5 ppm of $H_2S$ in air.

(c)  Studied have also reported that individuals who suffered acute exposures to $H_2S$, were found to have significant brain damage and neurological deficits years after the exposures.

(d)  Scientific studies have found an association between spontaneous abortion and exposure to petrochemicals. Xu's 1998 study found that "exposure to petrochemicals, specifically benzene, gasoline, and hydrogen sulfide is significantly associated with increased frequency of spontaneous abortion."[1] Each

---

[1] Xu, Xiping, Sung-Il Cho, et al.. "Association of petrochemical exposure with spontaneous abortion." Occupational and Environmental Medicine. 55: 31-36. 1998

    chemical was individually found to have a statistically significant effect on the frequency of spontaneous abortion.[2]

(e)  The American Petroleum Institute's 1948 Toxicological review of Benzene, states that "Pregnant women nay be more prone to benzene poisoning than others."[3]

25.

An ultrasound performed only two weeks prior to the stillbirth showed a healthy baby girl.  Ms. Konrick's previous pregnancies resulted in health children born with no complications.

## NEGLIGENCE

26.

Ms. Konrick and her unborn child were injured as a direct result of the Defendants' negligent breach of their duties. Pursuant to Louisiana Civil Code 2315, 2317,  and 2317.1 defendants are labile for their actions and inactions.

27.

Louisiana C.C. 2315 provides, "Every act whatever of man that caused damages to another obliges him by whose fault it happened to repair it."  Exxon  and CRLLC  are liable for the damages caused by Ms. Konrick's exposure to benzene and $H_2S$  while performing work for U.S. Security Associates at the Chalmette Refinery.

28.

Exxon and CRLLC had a duty to provide a safe place to work place for contract workers, to provide for the safety of visitors to the facility, to provide adequate warnings concerning vapors and other hazards that security guards would come in contact with, to implement appropriate safety and engineering controls to prevent toxic exposures, to provide the proper personal protective equipment to contractors, or visitors to the refinery. Defendants' negligently

---

[2] Xu, Xiping, Sung-Il Cho, et al.. "Association of petrochemical exposure with spontaneous abortion." Occupational and Environmental Medicine. 55: 31-36. 1998, **Exhibit 1**

[3] American Petroleum Institute  (API), Toxicological Profile, Benzene, **Exhibit 2**

failed to discharge said responsibility.

29.

Pursuant to 2317 and 2317.1, Exxon and CRLLC are responsible for the damages caused by things in their custody or control including the Chalmette Refinery and leaking discharge pipes or spills on the facility.

30.

Exxon and CRLLC were on notice of a defect with the equipment at their facility upon receiving the odor complaint the morning of April 3, 2013.

31.

Exxon and CRLLC, in the exercise of reasonable care, should have procedures in place to discovery leaking equipment in a timely manner and to take corrective action to prevent release of toxic vapors.

32.

Additionally, Exxon Mobil and the Chalmette Refinery were negligent in:

(a) Failing to properly design, construct and maintain the Chalmette Refinery;

(b) Continuing to operate the facility under unsafe conditions;

(c) Failure to routinely inspect and maintain the discharge line;

(d) Failing to have adequate procedures in place to identify leaks or spills from all pipelines;

(e) Failing to locate the leak in a reasonable time after an odor complaint was reported;

(f) Failure to warn employees of their contractors, such as Ms. Konrick, of the risk of exposure to benzene, VOC's and $H_2S$ from the leak;

(g) Failure to provide adequate training to employees of its contractors such as Ms. Konrick, concerning the risk of exposure to chemicals such ad benzene, VOIC's and $H_2S$, or the appropriate protective equipment.

(h) Failure to take adequate precautions to avoid fetal exposure to chemical known to cause stillbirths and genetic defects;

(i) Failure to warn or notify contract security guards of the leak that occurred don April 3, 2013; and

(j) Failure to warn of notify contract security guard that benzene and $H_2S$ vapors posed a threat to their health, or the health of Ms. Konrick's fetus

33.

Exxon and CRLLC knew there was a release of petroleum waste containing amounts of benzene and hydrogen sulfide. Exxon and CRLLC knew these chemicals were toxic and could injure personnel and cause spontaneous abortions, yet Defendant's negligently failed to notify Ms. Konrick of the danger to her and her fetus.

**NATALIE KONRICK'S PERSONAL INJURY**

34.

Ms. Konrick suffered severe physical and emotional trauma as a result of the induced labor and stillbirth of her daughter on April 9, 2013. Ms. Konrick has been unable to continue working as a security guard at the refinery because it is a constant reminder of her stillborn daughter. She is entitled to recover for:

(a) Physical pain and suffering;

(b) Mental and emotional pain and anguish

(c) Medical expenses for the diagnosis of the fetus' death, inducing labor, and autopsy of her stillborn daughter;

(d) Medical expenses related to any treatment of her emotional pain and suffering;

(e) Loss of earnings; and

(f) Fear of cancer and other diseases.

### WRONGFUL DEATH OF UNBORN DAUGHTER

35.

Pursuant to La C.C. art. 2315, 2315.2 and 26, Ms. Natalie Konrick is entitled to recover for the wrongful death of her stillborn daughter which was caused by her exposure to hazardous levels of benzene and $H_2S$ at the Chalmette Refinery. She is entitled to recover for the loss of consortium and the loss of love and affection of her stillborn daughter.

### FRAUD, CONCEALMENT AND MISREPRESENTATION

36.

Chalmette Refining LLC (CRLLC) reported to the LDEQ that CRLLC field operators surveyed they areas for odors and potential sources on April 3, 2013, but "no finding of concern were identified."

37.

However, air monitoring from the site on the day (April 3, 2013) of the initial report of the leak found benzene levels of 14.2 ppm on a nearby cement road. This substantially exceeds the OSHA established Permissible exposure limit of 1 ppm 8 hour TWA, and maximum of 5 ppm in a 15 minute period permissible exposure limit for benzene .

38.

On April 3, 2013 measurements near the leak found $H_2S$ reading up to 184.9 ppm. This quantity exceeds the current OSHA peak exposure limit for $H_2S$ is 20 ppm ceiling concentration.

39.

Air monitoring on the next day, April 4, 2013 for Flare #1 Pipeline leak also reported benzene and $H_2S$ concentrations exceeding the OSHA Permissible exposure limits.

40.

The actual measurement for $H_2S$ and benzene on April 3, 2013 and April 4, 2013, contradict Exxon and CRLLCs statement that if found no areas of concern. Not only did Defendants falsely report that there were no areas of concern. They withheld critical information from contract workers such as Ms. Konrick concerning the leaking chemicals.

41.

Upon Information and belief, Exxon and CRLLC intentionally withheld information concerning the hazards of benzene and $H_2S$ from the contract Security Guards at the Chalmette Refinery.

42.

Exxon and CRLLC had a duty to make their facility safe for visitor on the property, such as Ms. Natalie Konrick. Exxon and CRLLC also had a duty to provide a contractor's employees, such as MS. Konrick as safe work environment. Exxon and CRLLC breached these duties by failing to train, warn or provide adequate personal protective equipment.

**Jury Trial**

**43.**

The plaintiffs pray for trial by jury.

## PRAYER

44.

Wherefore, Complainant prays for judgment in favor of Complainant and against Defendants in a sum to compensate her for all actual and special damages suffered by Natalie Konrick as a result of the Defendant's conduct, plus pre-judgment and post-judgment interests, and all other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ L. Eric Williams, Jr.
L. ERIC WILLIAMS, JR., LSBN 26773
**WILLIAMS LAW OFFICE, LLC**
433 Metairie Rd, Suite 302
Metairie, Louisiana  70002
Telephone: (504) 832-9898
Facsimile:  (504) 832-9811
eric@amlbenzene.net

and

*/s/ Amber E. Cisney*
RICHARD J. FERNANDEZ, LSBN 05532
AMBER E. CISNEY, LSBN 28821
**LAW OFFICE OF RICHARD J. FERNANDEZ, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 834-8500
Facsimile: (504) 834-1511
rick@rjfernandezlaw.com
amber@rjfernandezlaw.com

**and**

Michael G. Stag, Bar No. 23314
Stephen H. Wussow, No. 35391
**SMITH STAG, L.L.C.**
One Canal Place
365 Canal Street, Suite 2850
New Orleans, Louisiana 70130
(504) 593-9600 Telephone
(504) 593-9601 Facsimile
mstag@smithstag.com
swussow@smithstag.com
**ATTORNEYS FOR PLAINTIFFS**